## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **UNITED STATES ex rel** | ) | |
| | ) | |
| **LEAMON M. FITE, III,** | ) | |
| | ) | |
| *Relator-Plaintiff,* | ) | **CIVIL ACTION NO.** |
| | ) | **5:13-cv-1626-LSC** |
| **v.** | ) | |
| | ) | |
| **APERIAN LABORATORY** | ) | |
| **SOLUTIONS, LLC, ALABAMA** | ) | |
| **HEALTH CARE AUTHORITY** | ) | |
| **d/b/a EAST ALABAMA MEDICAL** | ) | |
| **CENTER; SUMMIT** | ) | |
| **DIAGNOSTICS, LLC; COMPASS** | ) | |
| **LABORATORY SERVICES, LLC;** | ) | |
| **TOTAL DIAGNOSTIC** | ) | |
| **SOLUTIONS, LLC; JANNIE** | ) | |
| **LYNN WORK CHAPMAN; AND** | ) | |
| **SHELINDER AGGARWAL,** | ) | |
| | ) | |
| *Defendants.* | ) | |

## DEFENDANTS APERIAN LABORATORY SOLUTIONS, LLC AND EAST ALABAMA HEALTH CARE AUTHORITY d/b/a EAST ALABAMA MEDICAL CENTER'S ANSWER TO RELATOR-PLAINTIFF'S SECOND AMENDED COMPLAINT AND COUNTERCLAIM

Defendants Aperian Laboratory Solutions, LLC ("Aperian") and East Alabama Health Care Authority d/b/a East Alabama Medical Center's ("EAMC"), by their attorneys, answer Plaintiff's Second Amended Complaint (Doc. 63).

Defendants deny each and every allegation in the Second Amended Complaint, except as specifically admitted in this Answer, and any factual

averment admitted in this Answer is admitted only as to specific facts and not as to any conclusions, characterizations, implications, innuendos, or speculations that are contained in the averment or in the Second Amended Complaint as a whole. Defendants also deny any allegations in the headings in the Second Amended Complaint. These comments are incorporated, to the extent appropriate, into each numbered paragraph of this Answer.

Defendants answer the Second Amended Complaint in the corresponding numbered paragraphs as follows:

## I.      Summary of the Case

The allegations of the paragraphs in this section are the Relator's characterizations of his claims and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of these paragraphs.

## II.     Table of Contents

The table of contents of the Second Amended Complaint does not involve these Defendants and, therefore Defendants deny the same.

## III.    Parties

1.      The allegations of Paragraph 1 are the Relator's characterizations of his description of the Relator and Defendants to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of Paragraph 1.

## A.    Relator

2.    Defendants are unable to confirm or deny the allegations made in paragraph 2 for lack of knowledge or information sufficient to form a belief as to the truth of the allegations and therefore, they are denied.

3.    Admitted

4.    Defendants admit that Relator has direct and independent knowledge of some claims, but deny that Relator has direct and independent knowledge of all claims submitted by Defendants.  The remaining allegation that Relator is an original source is a characterization of law and a legal conclusion to which no answer is necessary.  To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

5.    Defendants admit that Relator performed job functions for Defendants.  Defendants admit that Relator has some direct and independent knowledge of some conduct but deny Relator has direct and independent knowledge of all conduct alleged in the complaint.  Except as expressly admitted, the allegations of this paragraph are denied.

6.    Defendants admit the allegations in Paragraph 6.

7.    Defendants admit the allegations in Paragraph 7.

8.    Defendants admit Relator as some first-hand knowledge, but deny that Relator has first-hand knowledge of all clinical operations of all departments

within the EAMC Clinical Laboratory, the clinical operation and business operation of Laboratory Outreach, and the clinical operation and business operation of Aperian Laboratory Solutions.

9.  Defendants admit that Relator attended Tuesday administrative meetings.  Defendants admit that individuals attended the Tuesday administrative meetings from time to time including other employees of Defendants.  Defendants admit that Relator gained some knowledge of the operations of the Defendants.  Except as expressly admitted, the allegations of this paragraph are denied.

10.  Defendants admit that Relator gained some knowledge of the operations of the Defendants. Except as expressly admitted, the allegations of this paragraph are denied.

11.  Defendants admit the allegations in Paragraph 11.

12.  Defendants admit the allegations in Paragraph 12.

13.  Defendants admit the allegations in Paragraph 13.

14.  Defendants admit the allegations in Paragraph 14.

15.  Defendants admit the allegations in Paragraph 15.

16.  Defendants admit the allegations in Paragraph 16.

17.  Defendants admit that Relator was a liaison between Aperian and Peachtree Medical Billing.  The term "primary" is vague and ambiguous which

prevents Defendants from providing an answer; therefore, this allegation is denied. Defendants admit that Peachtree began billing for Aperian in 2009.

18.    Defendants deny that Relator completed "all" private insurance payer credentialing.    The term "many" is vague and ambiguous which prevents Defendants from providing an answer; therefore, this allegation is denied.

19.    Defendants admit the allegations in Paragraph 19.

20.    The term "separated" is vague and ambiguous which prevents Defendants from providing an answer, therefore this allegation is denied. Defendants admit that Relator resigned his employment with Defendants. Defendants admit that the Aperian billing was moved back in-house to EAMC's billing department.    Defendants admit that Relator worked with LeAnne Moran, Michelle Pitts, and Tracy Liveoak in the process.    Except as expressly admitted, the allegations of this paragraph are denied.

21.    Defendants admit the allegations in Paragraph 21.

22.    Defendants admit that Peachtree Billing ran reports for Aperian that provided various information.  The terms "reliably" and "regularly" are vague and ambiguous which prevent Defendants from providing an answer; therefore, this allegation is denied.    Except as expressly admitted, the allegations of this paragraph are denied.

23.    Defendants deny the allegations in Paragraph 23.

## B. Defendants

24.     Defendants admit the allegations in Paragraph 24.

25.     Defendants admit the allegations in Paragraph 25.

26.     Defendants lack sufficient information to form a belief as to the truth of the allegations about Summit Diagnostics, LLC's corporate information, therefore those allegations are denied. The terms of the agreement between Aperian and Summit speak for themselves, and to the extent any allegations of Paragraph 26 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.

27.     Defendants lack sufficient information to form a belief as to the truth of the allegations about Compass Laboratory Services, LLC's corporate information, therefore those allegations are denied. Defendants lack sufficient information to form a belief as to the truth of the allegations about Jannie Chapman's position with Compass or Total Diagnostic Solutions, LLC, therefore they are denied. Defendants admit that Compass is a full service laboratory. The terms of the agreement between Aperian and Compass speak for themselves, and to the extent any allegations of Paragraph 27 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.

28.     Defendants lack sufficient information to form a belief as to the truth of the allegations about Total Diagnostic Solutions, LLC's corporate information, therefore those allegations are denied.   The terms of the agreement between Aperian and Total speak for themselves, and to the extent any allegations of Paragraph 28 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.

29.     Defendants lack sufficient information to form a belief as to the truth of the allegations of Paragraph 29 therefore they are denied.

30.     Defendants lack sufficient information to form a belief as to the truth of the allegations of Paragraph 30 therefore they are denied.

### IV.     Jurisdiction and Venue

31.     Defendants admit that Relator purports to bring this action under 31 U.S.C. § 3729 et seq.   Defendants state that on or before August 11, 2015, the United States notified the Court that it was not intervening in this action at that time.   Defendants admit Relator purports to seek to recover damages, civil penalties, and other relief as alleged in Paragraph 31 of the Second Amended Complaint, but Defendants deny there is any basis for Relator's action or that Relator is entitled to any relief.   Defendants deny that their conduct gives rise to any violations of 31 U.S.C. § 3729, *et seq*.

32.     The allegations in Paragraph 32 of the Second Amended Complaint state a legal conclusion requiring no responsive pleading. To the extent a response is required, Defendants admit that at least one of the parties to this action transacts business in this District, but deny the remaining allegations in Paragraph 32.

33.     The allegations in Paragraph 33 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Defendants state that they do not intend to contest venue in this District. To the extent a response is required, Defendants deny the allegations in Paragraph 33.

34.     The allegations of Paragraph 34 state legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

## V.     Governing Law

35.     Defendants admit that Relator purports to bring this action pursuant to federal statutes, but deny there is any basis for Relator's action or that Relator is entitled to any relief.

36.     The allegations in Paragraph 36 of the Second Amended Complaint state legal conclusions requiring no responsive pleading.  Furthermore, the statute referenced in Paragraph 36 establishes its contents.   To the extent a further response is required, Defendants deny the allegations in Paragraph 36 as an incomplete, generalized, and unsupported description of the FCA.

### B.     The Anti-Kickback Statute

37.     The allegations of this paragraph are the Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 37 establishes its contents.  To the extent a further response is required, Defendants deny the allegations in Paragraph 37 as an incomplete, generalized, and unsupported description of the Anti-Kickback Statute.

38.     The allegations of this paragraph are the Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 38 establishes its contents.  To the extent a further response is required, Defendants deny the allegations in Paragraph 38 as an incomplete, generalized, and unsupported description of the Anti-Kickback Statute.

39.     The allegations of this paragraph are the Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statutes for Medicare, Medicaid and CHAMPUS/Tricare referenced in Paragraph 39 establish their content.  To the extent a further response

is required, Defendants deny the allegations in Paragraph 39 as an incomplete, generalized, and unsupported description of the Anti-Kickback Statute.

40.     The allegations of this paragraph are the Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statutes for Medicare, Medicaid and CHAMPUS/Tricare referenced in Paragraph 40 establish their content. To the extent a further response is required, Defendants deny the allegations in Paragraph 40 as an incomplete, generalized, and unsupported description of the Anti-Kickback Statute.

### C.     The Stark Law

41.     The allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 41 establishes its contents. To the extent a further response is required, Defendants deny the allegations in Paragraph 41 as an incomplete, generalized, and unsupported description of the Stark Statute.

42.     The allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 42 establishes its contents. To the

extent a further response is required, Defendants deny the allegations in Paragraph 42 as an incomplete, generalized, and unsupported description of the Stark Statute.

43.    The allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 43 establishes its contents.  To the extent a further response is required, Defendants deny the allegations in Paragraph 43 as an incomplete, generalized, and unsupported description of the Stark Statute.

44.    The allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 44 establishes its contents.  To the extent a further response is required, Defendants deny the allegations in Paragraph 44 as an incomplete, generalized, and unsupported description of the Stark Statute.

45.    The allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph. Furthermore, the statute referenced in Paragraph 45 establishes its contents.  To the extent a further response is required, Defendants deny the allegations in Paragraph 45 as an incomplete, generalized, and unsupported description of the Stark Statute.

46.     Defendants deny there is any basis for Relator's action or that Relator is entitled to any relief.  Defendants deny that their conduct gives rise to any violations of law.

47.     The Defendants deny a false certification gives rise to a claim under the FCA.  The Defendants deny that they violated a condition of payment. Defendants deny that their conduct gives rise to any violations of law. Furthermore, the allegations of this paragraph are Relator's characterizations of the law and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

## VI.     The Federal Healthcare Programs

48.     Defendants admit that Relator purports to bring this action pursuant to federal statutes, but deny there is any basis for Relator's action or that Relator is entitled to any relief.

### A.     The Medicare Program

49.     The allegations in Paragraph 49 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 49 establishes its contents. Defendants admit that Medicare is a federal-healthcare program created by statute and administered by the federal Centers for Medicare & Medicaid Services ("CMS"). To the extent a

further response is required, Defendants deny the allegations in Paragraph 49 as an incomplete, generalized, and unsupported description of Medicare.

## B. The Medicaid Program

50. The allegations in Paragraph 50 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 50 establishes its contents. Defendants admit that Medicaid is a federal-healthcare program created by statute and administered and funded by and through the federal and state governments. To the extent a further response is required, Defendants denies the allegations in Paragraph 50 as an incomplete, generalized, and unsupported description of Medicaid.

51. The allegations in Paragraph 51 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 51 establishes its contents. Defendants admit that Medicaid is a federal-healthcare program created by statute and administered and funded by and through the federal and state governments. To the extent a further response is required, Defendants denies the allegations in Paragraph 51 as an incomplete, generalized, and unsupported description of Medicaid.

52. The allegations in Paragraph 52 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 52 establishes its contents. Defendants admit that

Medicaid is a federal-healthcare program created by statute and administered and funded by and through the federal and state governments. To the extent a further response is required, Defendants denies the allegations in Paragraph 52 as an incomplete, generalized, and unsupported description of Medicaid.

### C.    Tricare/CHAMPUS

53.    The allegations in Paragraph 53 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 53 establishes its contents. To the extent a further response is required, Defendants deny the allegations in Paragraph 53 as an incomplete, generalized, and unsupported description of Tricare.

54.    The allegations in Paragraph 54 of the Second Amended Complaint state legal conclusions requiring no responsive pleading. Furthermore, the statute referenced in Paragraph 54 establishes its contents. To the extent a further response is required, Defendants deny the allegations in Paragraph 54 as an incomplete, generalized, and unsupported description of Tricare.

### VII.  Factual Allegations

55.    Defendants deny the allegations in Paragraph 55.

56.    Defendants deny the allegations in Paragraph 56.

57.    Defendants deny the allegations in Paragraph 57.

### A.    The Commission-Based Marketing

58.    Defendants deny the allegations in Paragraph 58.

59.     The allegations of this paragraph are Relator's characterizations, arguments and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

60.     The allegations of this paragraph are Relator's characterizations, arguments and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

61.     The allegations of this paragraph are Relator's characterizations, arguments and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

62.     Defendants admit that Relator was responsible for entering into any contracts on behalf of Aperian.  The remaining allegations of this paragraph are Relator's characterizations, arguments and legal conclusions to which no response is necessary. To the extent a response is deemed necessary, Defendants deny the allegations of this paragraph.

63.     Defendants admit that Jerry McHan as the medical director of Aperian was involved in communications with Summit, Compass and TDS.  However, Relator took the lead in communications with Summit, Compass and TDS. Defendants admit that George Powell is affiliated with Summit and Jannie Chapman is affiliated with Compass and TDS.  Defendants also admit that draft

contracts were exchanged between the parties. Except as expressly admitted, the allegations of this paragraph are denied.

64. Defendants admit that contract negotiations would go back and forth between the parties. Except as expressly admitted, the allegations of this paragraph are denied.

65. Defendants admit that Ken Lott would be copied on some emails regarding contract negotiations but deny that he was copied on all emails or communications. The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 65 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

66. The terms "typically," "reach out," and "various" are vague and ambiguous which prevent Defendants from providing an answer; therefore, this allegation is denied. Except as expressly admitted, the allegations of this paragraph are denied.

67. Defendants deny the allegations in Paragraph 67.

68. The terms of the email speak for themselves, and to the extent any allegations of Paragraph 68 are inconsistent with the written email or taken out of

context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

69. The term "scheme" is vague and ambiguous which prevent Defendants from providing an answer; therefore, the allegations in this Paragraph are denied. The terms of the agreements speak for themselves, and to the extent any allegations of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

### 1. Summit Diagnostics Markets for Aperian.

70. Defendants admit that George Powell approached Aperian. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 70 are inconsistent with the written agreement or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

71. Defendants deny the contract on its face violates the Anti-Kickback Statute. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 71 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and

Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

72.     Defendants deny the allegations of Paragraph 72.

73.     Defendants deny the contract on its face violates the Anti-Kickback Statute. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 73 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

74.     The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 74 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

75.     The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 75 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

76. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 76 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

77. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 77 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

78. Defendants admit that status calls took place involving various individuals for both Summit and Aperian. Except as expressly admitted, the allegations of this paragraph are denied.

79. Defendants admit that status calls took place discussing various topics. Except as expressly admitted, the allegations of this paragraph are denied.

80. Defendants admit that Aperian made payments to Summit Diagnostics, but deny that payments were made for referrals. Except as expressly admitted, the allegations of this paragraph are denied.

81.     Defendants admit that documentation of payments from Aperian to Summit Diagnostics exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

82.     Defendants admit that documentation of payments from Aperian to Summit Diagnostics exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

83.     Defendants deny the allegations of Paragraph 83.

84.     Defendants deny that there was an improper contractual relationship between Summit Diagnostics and Aperian.  Defendants admit submitting claims to Medicare, Medicaid, and Tricare.  Except as expressly admitted, the allegations of this paragraph are denied.

85.     Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

86.     Defendants admit that documentation of Aperian's claims information exists in Aperian's accounting systems.   Except as expressly admitted, the allegations of this paragraph are denied.

87.     Defendants admit that claims were submitted on CMS Form 1500. The terms of the claim form speak for themselves and to the extent any allegations of Paragraph 87 are inconsistent with the claim forms or taken out of context such

allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

88. Defendants deny the allegations of Paragraph 88.

89. Defendants admit that documentation of Aperian's claims information exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

90. Defendants deny the allegations of Paragraph 90.

91. Defendants deny the allegations of Paragraph 91.

92. Defendants deny the allegations of Paragraph 92.

93. Defendants deny the allegations of Paragraph 93.

94. Defendants deny that the arrangement with Aperian, Compass and TDS is a marketing scheme. Defendants admit that Jannie Chapman is involved in both Compass and TDS. Except as expressly admitted, the allegations of this paragraph are denied.

95. Defendants are unable to confirm or deny the allegations made in paragraph 95 for lack of knowledge or information sufficient to form a belief as to the truth of the allegations and therefore, they are denied.

96. Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

97.    Defendants admit that email communications existed between Aperian, Compass, and TDS.  Except as expressly admitted, the allegations of this paragraph are denied.

98.    Defendants admit that Medical Management Plus conducted an audit of Aperian's claims.   Except as expressly admitted, the allegations of this paragraph are denied.

99.    Defendants deny the allegations of Paragraph 99.

100.    Defendants admit that Roben Nutter engaged Medical Management Plus to perform the audit.

101.    Defendants admit that Medical Management Plus presented its findings to Roben Nutter.  Except as expressly admitted, the allegations of this paragraph are denied.

102.    Defendants deny the allegations of Paragraph 102.

103.    Defendants deny the allegations of Paragraph 103.

104.    The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 104 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

105. The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 105 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

106. Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

107. Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

108. Defendants deny that if $35,000 a month was not enough to equate with the former percentage arrangement, the monthly amount would be increased. Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

109. The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 109 of the Second Amended Complaint are inconsistent with the written agreement or taken out of context such allegations are

denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

110.   Defendants admit that conversations took place between the parties and occasionally included their attorneys about revisions to the contracts.  Except as expressly admitted, the allegations of this paragraph are denied.

111.   Defendants deny the allegations in Paragraph 111.

112.   Defendants deny the allegations in Paragraph 112.

113.   The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 113 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

114.   Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

115.   Defendants deny the allegations of Paragraph 115.

116.   The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 116 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict

proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

117.   Defendants deny the allegations of Paragraph 117.

118.   The terms of the agreements speak for themselves, and to the extent any allegations of Paragraph 118 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

119.   Defendants admit that documentation of payments from Aperian to Compass and TDS exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

120.   Defendants admit that Aperian submitted claims to Federal payors during the time alleged by Relator.  Defendants admit that documentation of Aperian's claims information exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

121.   Defendants admit that Aperian submitted claims to Medicaid during the time alleged by Relator.  Defendants admit that documentation of Aperian's claims information exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

122.   Defendants deny the allegations in Paragraph 122.

123. Defendants deny the allegations in Paragraph 123.

124. Defendants admit that Aperian and Compass discussed a potential merger between the two entities with involvement by the Cain Brothers. Except as expressly admitted, the allegations in the paragraph are denied.

125. Defendants deny the allegations in Paragraph 125.

126. Defendants deny the allegations in Paragraph 126.

127. Defendants admit that claims were submitted on CMS Form 1500. The terms of the claim form speak for themselves and to the extent any allegations of Paragraph 127 are inconsistent with claim form or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

128. Defendants deny the allegations in Paragraph 128.

129. Defendants deny they violated the Anti-Kickback Statute. Defendants admit that documentation of claims payment exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

130. Defendants deny the allegations in Paragraph 130.

131. Defendants deny the allegations of Paragraph 131.

### 3. Magnolia Analytical Markets for Aperian

132. Defendants deny the allegations in Paragraph 132.

133. Defendants are unable to confirm or deny the allegations made in Paragraph 133 for lack of knowledge or information sufficient to form a belief as to the truth of the allegations and therefore, they are denied.

134. The terms of the email speak for themselves and to the extent any allegations of Paragraph 134 are inconsistent with the email or taken out of context such allegations are denied. Defendants deny the remaining allegations in Paragraph 134.

135. Defendants deny the allegations in Paragraph 135.

136. Defendants deny the allegations in Paragraph 136.

137. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

138. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

139. Defendants admit that claims were submitted on CMS Form 1500. The terms of the claim form speak for themselves and to the extent any allegations of Paragraph 139 are inconsistent with claim form or taken out of context such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

### 4. Additional Facts Regarding the Commission-Based Marketing

140. Defendants admit that Defendants hired an outside auditor, Colaborate, to conduct an audit regarding Aperian's business. Defendants admit that Kevin Hunter was the primary contact for Colaborate. Defendants admit the audit was completed in June 2012. Except as expressly admitted, the allegations of this paragraph are denied.

141. The terms of the Colaborate audit speak for themselves, and to the extent any allegations of Paragraph 141 are inconsistent with the audit or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

142. Defendants deny the allegations in Paragraph 142.

### B. The Point-of-Care Testing Cup Scheme

143. Defendants deny they violated the Stark Laws, Anti-Kickback Statute, and False Claims Act and deny there was any "scheme."

144. Defendants deny the allegations in Paragraph 144.

145. The terms of the Special Fraud Alert and the Florida Healthcare Agency opinion in Dominion Diagnostics speak for themselves, and to the extent any allegations of Paragraph 145 are inconsistent with the fraud alert or opinion, taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied.

146.    The terms of the Florida Healthcare Agency opinion in Dominion Diagnostics speak for themselves, and to the extent any allegations of Paragraph 146 are inconsistent with the opinion, taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied.

147.    The terms and date of *Ameritox* case speak for themselves, and to the extent any allegations of Paragraph 147 are inconsistent with the case, taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied.

148.    The terms and date of the Special Fraud Alert speak for themselves, and to the extent any allegations of Paragraph 148 are inconsistent with the Special Fraud Alert, taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied.

149.    Defendants deny the allegations in Paragraph 149.

150.    Defendants deny that the physicians received anything of value. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.    Except as expressly admitted, the allegations of this paragraph are denied.

151.    Defendants deny that the Noble cups were an inducement and/or a thing of value.    Defendants deny any of the claims were illegal false claims.

Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

152. Defendants deny the allegations in Paragraph 152.

153. Defendants deny the allegations of Paragraph 153.

154. Defendants deny the allegations in Paragraph 154.

155. Defendants deny the allegations in Paragraph 155.

156. The terms of the agreement between Aperian and Summit speak for themselves, and to the extent any allegations of Paragraph 156 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof.

157. Defendants deny the allegations of Paragraph 157.

158. The term "referral source" is vague and ambiguous which prevents Defendants from providing an answer; therefore, the allegations are denied.

159. Defendants deny the allegations in Paragraph 159.

160. Defendants deny the allegations in Paragraph 160.

161. Defendants deny the allegations in Paragraph 161.

162. Defendants admit that CMS implemented new Codes G0431 and G0434. Except as expressly admitted, the allegations of this paragraph are denied.

163.   The terms of CMS' coding requirements speak for themselves and to the extent any allegations of Paragraph 163 are inconsistent with the coding requirements, taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied and Defendants demand strict proof thereof.   Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.   Except as expressly admitted, the allegations of this paragraph are denied.

164.   The terms of CMS' G0434 speak for themselves and to the extent any allegations of Paragraph 164 are inconsistent with the coding requirements or taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied and Defendants demand strict proof thereof.

165.   The terms of CMS' coding requirements speak for themselves and to the extent any allegations of Paragraph 165 are inconsistent with the coding requirements or taken out of context, or apply to the circumstances alleged in the Second Amended Complaint such allegations are denied and Defendants demand strict proof thereof.

166.   Defendants deny the allegations of Paragraph 166.

167.   Defendants deny the allegations of Paragraph 167.

168.   Defendants deny the allegations of Paragraph 168.

169.    The terms of the Colaborate audit speak for themselves and to the extent any allegations of Paragraph 169 are inconsistent with written audit report or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Defendants deny the remaining allegations of Paragraph 169.

170.    Defendants deny the allegations in Paragraph 170.

171.    Defendants deny the allegations of Paragraph 171.

172.    Defendants deny the allegations of Paragraph 172.

173.    Defendants admit submitting claims using a CMS Form 1500.  The terms of the claim form speak for themselves and to the extent any allegations of Paragraph 173 are inconsistent with claim form or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

174.    Defendants deny the allegations of Paragraph 174.

175.    Defendants deny the allegations of Paragraph 175.

176.    Defendants deny they intended to use the cups as an inducement. Defendants state the terms of any such email speak for themselves and to the extent any allegations of Paragraph 176 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

177.   Defendants deny they intended to use the cups as an inducement. Defendants state the terms of any such email speak for themselves and to the extent any allegations of Paragraph 177 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

178.   Defendants deny they intended to use the cups as an inducement. Defendants state the terms of any such email speak for themselves and to the extent any allegations of Paragraph 178 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

179.   Defendants deny they intended to use the cups as an inducement. Defendants state the terms of any such email speak for themselves and to the extent any allegations of Paragraph 179 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

180.   Defendants admit that Relator had access to Microsoft Sharepoint database.  The information contained in Sharepoint speaks for itself and to the extent any allegations of Paragraph 180 are inconsistent with the contents of Sharepoint or taken out of context, such allegations are denied and Defendants

demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

181. Defendants deny the allegations of Paragraph 181.

182. Defendants deny the claims were false and made under a "scheme" that violated federal laws. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

183. Defendants deny the Noble cups were an inducement and provided anything of value to physicians. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

### C.    The Collector Personnel Scheme

184. Defendants deny the allegations in Paragraph 184.

185. Defendants admit that urine sample collectors were placed in physician offices to perform urine collection sample duties. Defendants deny the remaining allegations in Paragraph 185.

186. The terms of the Special Fraud Alert speak for themselves, and to the extent any allegations of Paragraph 186 are inconsistent with the fraud alert, taken out of context, or apply to the circumstances alleged in the Second Amended

Complaint, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

187. The terms of the Colaborate audit speak for themselves, and to the extent any allegations of Paragraph 187 are inconsistent with the audit or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

188. Defendants deny the allegations of Paragraph 188.

189. Defendants admit that Aperian provided urine specimen collectors. The term "categories of clients" is vague and ambiguous which prevents Defendants from providing an answer; therefore, this allegation is denied. Except as expressly admitted, the allegations of this paragraph are denied.

## 1. Collectors Provided to Aperian Base Clients

190. The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 190 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

191. The terms of the Special Fraud Alert and opinion speak for themselves, and to the extent any allegations of Paragraph 191 are inconsistent with the fraud alert or opinion, taken out of context, or apply to the circumstances

alleged in the Second Amended Complaint such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

192. Defendants deny that any improper incentives were provided to refer lab patients. The terms of the email speak for themselves, and to the extent any allegations of Paragraph 192 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

193. Defendants deny the allegations in Paragraph 193.

194. The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 194 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

195. Defendants deny that any false claim was submitted. Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems. Except as expressly admitted, the allegations of this paragraph are denied.

196. The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 196 are inconsistent with the lease

agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the allegations of this paragraph.

197. The term "One contract in the line of employee lease contracts" is vague and ambiguous which prevents Defendants from providing an answer; therefore, this allegation is denied. The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 197 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny that the claims submitted to Federal payors for referrals of laboratory testing from Gwinnett are false or violated the Stark or Anti-Kickback laws or False Claims Act.

198. The terms of the email speak for themselves, and to the extent any allegations of Paragraph 198 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the remaining allegations of this paragraph.

199. The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 199 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the allegations of this paragraph.

200.  Defendants deny that any false claim was submitted.  Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

201.  The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 201 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Defendants deny the allegations of this paragraph.

202.  The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 202 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Defendants deny the allegations of this paragraph.

203.  The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 203 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof.

204.  Defendants deny that any false claim was submitted.  Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

205.  The terms of the employee lease agreements speak for themselves, and to the extent any allegations of Paragraph 205 are inconsistent with the lease agreements or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Defendants deny the allegations of this paragraph.

206.  The terms of the email speak for themselves, and to the extent any allegations of Paragraph 206 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the remaining allegations of this paragraph.

207.  Defendants deny that any false claim was submitted.  Defendants admit that documentation of Aperian's claims exists in Aperian's accounting systems.  Except as expressly admitted, the allegations of this paragraph are denied.

**2.     Collectors Provided To Summit Diagnostic-Referred Clients**

208.  Defendants admit that Aperian provided urine specimen collectors in offices of physicians and contracted with several temp agencies.  Except as expressly admitted, the allegations of this paragraph are denied.

209.  Defendants deny the allegations in Paragraph 209.

210.  Defendants deny the allegations in Paragraph 210.

211.   Defendants admit they used Augmentation Incorporated, Delta Personnel, Inc., All Medical Personnel, Inc., and Favorite Healthcare Staffing. Except as expressly admitted, the allegations of this paragraph are denied.

212.   Defendants admit that George Powell made an in-person presentation to Aperian.   Except as expressly admitted, the allegations of this paragraph are denied.

213.   Defendants admit they used Augmentation Incorporated, Delta Personnel, Inc., All Medical Personnel, Inc., and Favorite Healthcare Staffing. Defendants deny that the collectors performed services not related to specimen collection services for the physicians.   Except as expressly admitted, the allegations of this paragraph are denied.

214.   The terms of the email speak for themselves, and to the extent any allegations of Paragraph 214 are inconsistent with the email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny that they violated the Stark or Anti-Kickback laws or False Claims Act.   Except as expressly admitted, the allegations of this paragraph are denied.

215.   Defendants deny the allegations of Paragraph 215.

### 3. Collectors Provided to Compass/TDS-Referred Clients.

216. To the extent the allegations in Paragraph 216 of the Second Amended Complaint do not involve these Defendants, the Defendants are without information or belief to admit or deny the allegations of Paragraph 216, and therefore deny the same. The Defendants deny the provision of Collectors was an inducement to the physicians to conduct testing and provide referrals.

217. Defendants admit they had phone calls with Compass and/or TDS about the business between the companies. Defendants deny there was any scheme to induce referrals. Except as expressly admitted, the allegations of this paragraph are denied.

218. Defendants admit that Compass or TDS provided collectors to physicians' offices, but deny they were provided as an inducement or violated the Stark or Anti-kickback laws. Except as expressly admitted, the allegations of this paragraph are denied.

219. Defendants deny the allegations in Paragraph 219.

220. Defendants admit there were status phone calls between the companies regarding the work between the companies. Defendants deny there was any illegal scheme or scheme that violated the Stark or Anti-Kickback laws. Except as expressly admitted, the allegations of this paragraph are denied.

221.  Defendants admit that status calls occurred discussing the turn around time for Aperian's test results.  Defendants also admit that some samples took longer to test because of the longer turn-around times.  Except as expressly admitted, the allegations of this paragraph are denied.

222.  Defendants admit that several specimens aged for an exceedingly long period of time.  Except as expressly admitted, the allegations of this paragraph are denied.

223.  Defendants deny the allegations in Paragraph 223.

224.  Defendants deny the allegations in Paragraph 224.

225.  Defendants deny the allegations in Paragraph 225.

> ### D.      EAMC Lab Outreach Program Provides Collectors to Physicians' Offices.

226.  Defendants admit that Aperian provided urine specimen collectors in offices of physicians.  Defendants deny there was any illegal scheme or scheme that violated the Stark or Anti-Kickback laws.  Except as expressly admitted, the allegations of this paragraph are denied.

227.  Defendants admit that Aperian provided urine specimen collectors in offices of physicians.  Defendants deny there was any illegal scheme or scheme that violated the Stark or Anti-Kickback laws.  Except as expressly admitted, the allegations of this paragraph are denied.

228.  Defendants deny the allegations in Paragraph 228.

### 1. Collectors Employed Directly by EAMC

229.  Defendants admit that Tabitha Spratlin and Latressa Whitfield are employees of EAMC.  Except as expressly admitted, the allegations of this paragraph are denied.

230.  Defendants admit that Tabitha Spratlin and Latressa Whitfield performed collections for EAMC. Defendants deny that Tabitha Spratlin and Latressa Whitfield performed collections for Lee OBGYN.  Except as expressly admitted, the allegations of this paragraph are denied.

231.  Defendants deny the allegations in Paragraph 231.

232.  Defendants deny the allegations in Paragraph 232.

233.  Defendants deny the allegations in Paragraph 233.

### 2. Employee Lease Agreements

234.  Defendants admit that they entered into written employee lease agreements with Family Medicine Associates, Hiren K. Patel, M.D., P.C. and Lee OBGYN.  Except as expressly admitted, the allegations of this paragraph are denied.

235.  The terms of the written employee lease agreement speak for themselves, and to the extent any allegations of Paragraph 235 are inconsistent with the written agreement or taken out of context, such allegations are denied and Defendants demand strict proof thereof.

236. The terms of the written employee lease agreement speak for themselves, and to the extent any allegations of Paragraph 236 are inconsistent with the written agreement or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the relationship violates the Stark or Anti-Kickback Statutes. Except as expressly admitted, the allegations of this paragraph are denied.

237. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 237 are inconsistent with the written agreement or taken out of context such allegations are denied and Defendants demand strict proof thereof. Defendants deny the relationship violates the Stark or Anti-Kickback Statutes. Except as expressly admitted, the allegations of this paragraph are denied.

238. Defendants deny the allegations in Paragraph 238.

239. Defendants admit they had a written employee lease agreement with Family Medicine Associates of Opelika. The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 239 are inconsistent with the written agreement or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the relationship violates the Stark or Anti-Kickback Statutes. Except as expressly admitted, the allegations of this paragraph are denied.

240.   The terms of the agreement speak for themselves, and to the extent any allegations of Paragraph 240 are inconsistent with the written agreement or taken out of context, such allegations are denied and Defendants demand strict proof thereof.   Defendants deny the relationship violates the Stark or Anti-Kickback Statute.   Except as expressly admitted, the allegations of this paragraph are denied.

241.   Defendants deny the allegations in Paragraph 241.   Defendants also deny the Relator has direct knowledge of the matters that occurred after his resignation of employment from Defendants.

242.   Defendants deny the allegations in Paragraph 242.

**E.      Additional Facts Regarding Relator's Employment.**

243.   Defendants deny the allegations in Paragraph 243.

244.   The terms of the email speak for themselves, and to the extent any allegations of Paragraph 244 are inconsistent with the written email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

245.   The terms of the email speak for themselves, and to the extent any allegations of Paragraph 245 are inconsistent with the written email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Except as expressly admitted, the allegations of this paragraph are denied.

246.  Defendants deny the allegations in Paragraph 246.

247.  Defendants admit the Defendants have compliance policies and procedures.  Defendants admit that EAMC's policies and procedures require personnel to report known or suspected violations.  Defendants admit that Relator sent an email on April 23, 2013, to Ken Lott, but the terms of the email speak for themselves, and to the extent any allegations of Paragraph 247 are inconsistent with the written email or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

248.  The terms of the Defendants' compliance policies speak for themselves, and to the extent any allegations of Paragraph 248 are inconsistent with the policies or taken out of context, such allegations are denied and Defendants demand strict proof thereof.  Except as expressly admitted, the allegations of this paragraph are denied.

249.  Defendants admit that Relator sent an email on April 23, 2013 to Ken Lott, but the terms of the email speak for themselves, and to the extent any allegations of Paragraph 249 are inconsistent with the written email or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny the relationship violates the Stark or Anti-Kickback Statute. Except as expressly admitted, the allegations of this paragraph are denied.

250. Defendants deny that Relator was told that he was subject to a demotion due to his compliance concerns or reports. Defendants admit that Relator's inappropriate relationship with a subordinate would subject him to discipline. Except as expressly admitted, the allegations of this paragraph are denied.

251. Defendants admit that Relator had a meeting with Laura Grill and Roben Nutter. Defendants admit that Roben Nutter was Chief Compliance Officer and General Counsel for Defendants. Defendants object to responding to this allegation on the basis of the attorney client privilege and other privileges.

252. Defendants deny the allegations of Paragraph 252.

253. Defendants admit that a meeting occurred involving Ken Lott and Susan Johnston. Defendants admit that Relators inappropriate relationship with a subordinate led to his resignation. Except as expressly admitted, the allegations of this paragraph are denied.

254. Defendants admit that Defendants offered Relator three months severance which was conditioned upon Relator executing a written release. The terms of the release speak for themselves, and to the extent any allegations of Paragraph 254 are inconsistent with the release or taken out of context such allegations are denied and Defendants demand strict proof thereof. Defendants deny that Relator was told that he was subject to disciplinary action due to his

compliance concerns or reports.  Except as expressly admitted, the allegations of this paragraph are denied.

255.   The terms of the release speak for themselves, and to the extent any allegations of Paragraph 255 are inconsistent with the release or taken out of context, such allegations are denied and Defendants demand strict proof thereof. Defendants deny that Relator was subject to disciplinary action due to his compliance concerns or reports.  Except as expressly admitted, the allegations of this paragraph are denied.

## VIII. Causes of Action

**Count I: Violations of 31 U.S.C. 3729(a)(1) Concerning the Commission-Based Marketing Scheme Against Defendants Aperian, EAMC, and Summit Diagnostics**

256.   Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

257.   Denied.

258.   Denied.

259.   Denied.

260.   Denied.

261.   Denied.

262.   Denied.

263.   Denied.

264. Denied.

265. Denied.

266. Denied.

267. Denied.

268. Denied.

269. Denied.

270. Denied.

271. Denied.

272. Denied.

273. Denied.

274. Denied.

275. Denied.

**Count II: Violations of 31 U.S.C. § 3729(a)(1) Concerning the Point-of-Care Testing Cup Scheme *Against Defendants Aperian, EAMC, and Summit Diagnostics***

276. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

277. Denied.

278. Denied.

279. Denied.

280. Denied.

281. Denied.

282. Denied.

283. Denied.

284. Denied.

285. Denied.

286. Denied.

287. Denied.

288. Denied.

289. Denied.

290. Denied.

291. Denied.

292. Denied.

**Count III: Violations of 31 U.S.C. § 3729(a)(1)(A) Concerning the Collector Personnel Scheme** *Against Defendants Aperian, EAMC, and Summit Diagnostics*

293. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

294. Denied.

295. Denied.

296. Denied.

297. Denied.

298.   Denied.

299.   Denied.

300.   Denied.

301.   Denied.

302.   Denied.

303.   Denied.

304.   Denied.

305.   Denied.

306.   Denied.

307.   Denied.

308.   Denied.

309.   Denied.

**Count IV: Violations of 31 U.S.C. § 3729(a)(1) Concerning the Commission-Based Marketing Agreement Scheme *Against Defendants Aperian, EAMC, Compass, TDS, Chapman, and Aggarwal***

310.   Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

311.   Denied.

312.   Denied.

313.   Denied.

314.   Denied.

315.   Denied.

316.   Denied.

317.   Denied.

318.   Denied.

319.   Denied.

320.   Denied.

321.   Denied.

322.   Denied.

323.   Denied.

324.   Denied.

325.   Denied.

326.   Denied.

327.   Denied.

328.   Denied.

329.   Denied.

**Count V: Violations of 31 U.S.C. § 3729(a)(1) Concerning the Collector Personnel Scheme *Against Defendants Aperian, EAMC, Compass, TDS and Chapman***

330.   Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

331.   Denied.

332.  Denied.

333.  Denied.

334.  Denied.

335.  Denied.

336.  Denied.

337.  Denied.

338.  Denied.

339.  Denied.

340.  Denied.

341.  Denied.

342.  Denied.

343.  Denied.

344.  Denied.

345.  Denied.

**Count VI: Violation of 31 U.S.C. § 3729(a)(1) Concerning the Collector
Personnel Scheme *Against Defendants Aperian and EAMC***

346.  Defendants adopt and incorporate by reference the responses to the

preceding paragraphs above.

347.  Denied.

348.  Denied.

349.  Denied.

350. Denied.

351. Denied.

352. Denied.

353. Denied.

354. Denied.

355. Denied.

356. Denied.

357. Denied.

358. Denied.

**Count VII: Violations of 31 U.S.C. § 3729(a)(1) Concerning the Commission-Based Marketing Agreement Scheme *Against Defendants Aperian and EAMC***

359. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

360. Denied.

361. Denied.

362. Denied.

363. Denied.

364. Denied.

365. Denied.

366. Denied.

367. Denied.

368. Denied.

369. Denied.

370. Denied.

371. Denied.

372. Denied.

373. Denied.

## Count VIII: False Billings Incident to Anti-Kickback Statute and Stark Law Violations *Against Defendants EAMC and Aperian*

374. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

375. Denied.

376. Denied.

377. Denied.

378. Denied.

379. Denied.

380. Denied.

381. Denied.

382. Denied.

383. Denied.

384. Denied.

## Count IX: False Billings Incident to Anti-Kickback Statute and Stark Law Violations *Against Defendant Aggarwal*

385.   Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

386.   Denied.

387.   Denied.

388.   Denied.

389.   Denied.

390.   Denied.

391.   Denied.

392.   Denied.

393.   Denied.

394.   Denied.

395.   Denied.

## Count X: False Billings Incident to Anti-Kickback Statute and Stark Law Violations *Against Defendants Compass, TDS, and Chapman*

396.   Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

397.   Denied.

398.   Denied.

399.   Denied.

400. Denied.

401. Denied.

402. Denied.

403. Denied.

404. Denied.

405. Denied.

**Count XI: False Billings Incident to Anti-Kickback Statute Violations**
***Against Defendant Summit Diagnostics***

406. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

407. Denied.

408. Denied.

409. Denied.

410. Denied.

411. Denied.

412. Denied.

413. Denied.

414. Denied.

415. Denied.

## Count XII: Violation of the False Claims Act Whistleblower Protection Provisions at 31 U.S.C. § 3730(h) *Against Defendants EAMC and Aperian*

416. Defendants adopt and incorporate by reference the responses to the preceding paragraphs above.

417. Denied.

418. Denied.

419. Denied.

## PRAYER FOR RELIEF

Answering those portions of page 132 of the Second Amended Complaint entitled "Prayer for Relief," Defendants deny that Plaintiffs are entitled to any of the relief requested or to any relief whatsoever.

## FIRST DEFENSE

The allegations within the Second Amended Complaint fail to state a claim against Defendants upon which relief may be granted under Fed. R. Civ. P. 12 (b) (6).

## SECOND DEFENSE

Relator has failed to plead with the particularity required by Fed. R. Civ. P. 9(b), (f) and (g), to the prejudice of Defendants.

## THIRD DEFENSE

Relator's claims are barred, in whole or in part, because the Court lacks subject matter jurisdiction.

## FOURTH DEFENSE

Relator's claims are barred, in whole or in part, to the extent that they have been released, settled, resolved through an accord and satisfaction, waived, or otherwise compromised.

## FOURTH DEFENSE

The Government has ratified Defendants' conduct.

## FIFTH DEFENSE

To the extent that Relator attempts to extrapolate any claims and/or damages over a population of patients, without unique and individualized proof, Defendants' rights to procedural and substantive due process provided by the Fifth and Fourteenth Amendments to the United States Constitution and all applicable provisions of the Constitution of the State of Alabama have been violated.

## SIXTH DEFENSE

Some or all of the purported claims and allegations in the Second Amended Complaint are barred in whole or in part by the Government's prior knowledge of the facts underlying the allegedly false claims.

## SEVENTH DEFENSE

Some or all of the purported allegations and claims in the Second Amended Complaint are barred by the jurisdictional bars in 31 U.S.C. § 3730.

## EIGHTH DEFENSE

Some or all of the claims in the Second Amended Complaint are barred by the statute of limitations or by the doctrine of laches. To the extent Relator attempts to assert claims based on claims submitted beyond the applicable statutes of limitations, Relator's claims are barred, in whole or in part, by the applicable statute of limitations.

## NINTH DEFENSE

The conduct alleged by Relator in the Second Amended Complaint did not violate 42 U.S.C. § 1320a-7b or 42 C.F.R. § 1001.951 *et seq*.

## TENTH DEFENSE

Relator's claims are barred, in whole or in part, by the statutory exceptions provided for in 42 U.S.C. § 1320a-7b(b)(3).

## ELEVENTH DEFENSE

Relator's claims are barred, in whole or in part, by the regulatory exceptions provided for in 42 C.F.R. § 1001.952.

## TWELFTH DEFENSE

The conduct alleged by Relator in the Second Amended Complaint did not violate 42 U.S.C. §1395nn or 42 C.F.R. § 411.350 et seq.

## THIRTEENTH DEFENSE

Relator's claims are barred, in whole or in part, by the statutory exceptions provided for in 42 U.S.C. §1395nn.

## FOURTEENTH DEFENSE

Relator's claims are barred, in whole or in part, by the regulatory exceptions provided for in 42 C.F.R. § 411.355.

## FIFTEENTH DEFENSE

Any award of penalties or treble damages to the Government in this case would be a violation of the constitutional safeguards provided to Defendants under the Constitution of the United States of America.

## SIXTEENTH DEFENSE

The award of penalties and treble damages to the Government in this action would be a deprivation of property without the due process of law required under and the Fifth and Fourteenth Amendments to the United States Constitution and all other applicable provisions of the Constitution of the State of Alabama.

## SEVENTEENTH DEFENSE

Penalties and treble damages are a form of quasi-criminal sanctions. Therefore, the claim of the Government for penalties and treble damages cannot be upheld, because an award of penalties and treble damages without the same protections that are accorded criminal defendants, including, but not limited to,

protection against searches and seizures, double jeopardy and self-incrimination and the rights to confront adverse witnesses, to proof by evidence beyond a reasonable doubt, and to a speedy trial would violate Defendants' rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. These rights will be violated unless Defendants are afforded the safeguards guaranteed by these provisions, including, but not limited to, the right to separate trials if requested by Defendants for the determination of liability for treble damages and penalties, as well as for the determination of the amount of penalties and treble damages, if any.

## EIGHTEENTH DEFENSE

The award of penalties and treble damages to the Government are an unconstitutionally excessive fine under the Eighth Amendment to the United States Constitution because any award would be grossly disproportional to the gravity of Defendants' offense, if any.

## NINETEENTH DEFENSE

The Government's claim for penalties and treble damages cannot be upheld to the extent it violates or contravenes the holding of the United States Supreme Court in *BMW v. Gore*, 517 U.S. 559 (1996).

## TWENTIETH DEFENSE

Some or all of the Government's claims are barred by the doctrine of payment.

## TWENTY-FIRST DEFENSE

Plaintiffs have failed to allege facts sufficient to support a claim for attorneys' fees or costs.

## TWENTY-SECOND DEFENSE

The doctrine of forum non conveniens makes venue inappropriate.

## TWENTY-THIRD DEFENSE

Any recovery by the Government should be offset by the Government's gain.

## TWENTY-FOURTH DEFENSE

The doctrine of in pari delicto bars the claims.

## TWENTY-FIFTH DEFENSE

The claims are barred by the doctrines of recoupment and set-off.

## TWENTY-SIXTH DEFENSE

The claims are barred because the Government can show no actual injury.

## TWENTY-SEVENTH DEFENSE

The claims in the Second Amended Complaint are barred in whole or in part by the doctrines of unclean hands and/or inequitable conduct.

## TWENTY-EIGHTH DEFENSE

Any damages alleged in the Complaint were the result of intervening and/or superseding acts or omissions of parties over whom Defendants have no control.

## TWENTY-NINTH DEFENSE

To the extent that Plaintiffs attempt to extrapolate any claims and/or damages over a population of patients, without unique and individualized proof, Defendants' rights to procedural and substantive due process provided by the Fifth and Fourteenth Amendments to the United States Constitution and all applicable provisions of the Constitution of the State of Alabama have been violated.

## THIRTIETH DEFENSE

The Complaint is barred, in whole or in part, as Defendants terminated Relator's employment for legitimate, non-pretextual reasons.

## THIRTY-FIRST DEFENSE

Each and every act or omission of Defendants with respect to Relator was based on a legitimate, non-retaliatory reason and was not based on any protected activity or conduct on Relator's part.

## THIRTY-SECOND DEFENSE

To the extent that Relator establishes that any act or omission of Defendants was the result of protected activity or conduct on Relator's part, or was otherwise

founded on a retaliatory basis, Defendants would nonetheless have taken the same act or made the same omission in the absence of the retaliatory basis.

## THIRTY-THIRD DEFENSE

Defendants did not have the requisite knowledge to support a claim against Defendants under the False Claims Act. Defendants did not act knowingly within the meaning of the False Claims Act. Defendants did not have actual knowledge of any alleged falsity; act in deliberate ignorance of the truth or falsity of relevant information; or recklessly disregard the truth or falsity of relevant information. Defendants did not know that their conduct violated any law or regulation, including the Anti-Kickback Statute (which it did not); or act in deliberate ignorance or reckless disregard of the requirements of any law or regulation, including the Anti-Kickback Statute.

## THIRTY-FOURTH DEFENSE

Any claim for relief in the Second Amended Complaint is barred because any actions taken by Defendants were undertaken in good faith and constitute lawful, proper, justified and/or privileged conduct.

## THIRTY-FIFTH DEFENSE

There has been no measurable or discernible injury to the United States and/or Relator.

## THIRTY-SIXTH DEFENSE

Relator lacks standing to bring some or all claims.

## THIRTY-SEVENTH DEFENSE

The claims are barred to the extent that any alleged false statements or certifications did not constitute a condition of payment.

## THIRTY-EIGHTH DEFENSE

To the extent that any of Plaintiffs' claims violate the public disclosure provision, 31 U.S.C. § 3730(e)(4)(A) of the False Claims Act, 31 U.S.C. § 3729 et seq. (2011), they are jurisdictionally barred.

## THIRTY-NINTH DEFENSE

Relator's use of the Code of Federal Regulations to establish the Defendants submitted false claims violates Defendants' rights to procedural and substantive due process provided by the Fifth and Fourteenth Amendments to the United States Constitution.

## FORTIETH DEFENSE

This action was brought by Relator who planned, initiated and participated in the conduct complained upon.

## FORTY-FIRST DEFENSE

The qui tam provisions of the False Claims Act violate the standing requirements of Article III of the United States Constitution.

## FORTY-SECOND DEFENSE

Relator lacks direct and independent knowledge and is not an original source for any claims submitted by the Defendants after the date Relator resigned his employment.

## FORTY-THIRD DEFENSE

Because, at the time this Answer is filed, discovery has not been completed, Defendants reserve the right to amend its Answer and assert any and all further, supplemental or other defenses, including affirmative defenses, which become available during the course of discovery or trial.

## FORTY-FOURTH DEFENSE

Any allegation neither admitted nor denied is denied.

## DEFENDANTS' JURY TRIAL DEMAND

Defendants, pursuant to Federal Rule of Civil Procedure 38(b), demands trial by jury of all issues so triable.

## APERIAN LABORATORY SOLUTIONS, LLC'S AND EAST ALABAMA HEALTH CARE AUTHORITY'S COUNTERCLAIMS

Aperian Laboratory Solutions, LLC and East Alabama Health Care Authority d/b/a East Alabama Medical Center ("EAMC") (collectively, the "Medical Center") file the following counterclaims against Plaintiff/Relator Leamon "Trae" Fite, III ("Fite"):

## PARTIES, JURISDICTION, AND VENUE

1.      Aperian Laboratory Solutions, LLC is a domestic limited liability company. Its sole member is the East Alabama Health Care Authority.

2.      The East Alabama Health Care Authority d/b/a East Alabama Medical Center is a domestic non-profit corporation in Lee County, Alabama. EAMC's main campus is located in Opelika, Alabama. EAMC is a general acute care hospital with 314 beds and a skilled nursing facility with 26 beds. It serves Lee and surrounding counties.

3.      Leamon "Trae" Fite, III is a resident citizen of Alabama. He was hired by EAMC in 2005 as a lab assistant and worked for EAMC and Aperian in various positions until May 2013, when he resigned from his position as Director of Operations of Lab Outreach for EAMC and Director of Operations for Aperian after his improper relationship with a subordinate came to light. Fite refused to remedy the situation by ending that improper relationship, and he resigned his position effective May 21, 2013.

4.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1367.  The Medical Center's counterclaims include claims, e.g. for violation of the Computer Fraud and Abuse Act, that arise under the Constitution, laws, or treaties of the United States. Moreover, the Medical Center's counterclaims are so related to the claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Fite is subject to personal jurisdiction in this district and a substantial part of the events or omissions giving rise to the counterclaims occurred in this district.

## FACTS

**A.    The Medical Center hires Fite.**

6.    In 2004, EAMC Forensic Toxicology was accredited as a Forensic Urine Drug Testing Laboratory by CAP-FUDT.

7.    EAMC hired Fite as a lab assistant on May 23, 2005.

8.    As a part of his employment, Fite executed his "EAMC Electronic System(s) Access User Security Contract." *See* Contract attached as Exhibit 1. The Contract provided in pertinent part that, by signing the document, Fite was affirming that he had read and understood that he was required to keep EAMC's documents and information confidential:

- I understand that reading, understanding, and signing this **contract** are required before access to Access is granted.

- I understand that my use of Access is a privilege that only permits me to view confidential patient/employee information electronically **only as my viewing directly relates to my job duties**. I am responsible and accountable for appropriately accessing, using and maintaining confidentiality of information.
- **I accept this document as a contract**, and I accept responsibility for appropriately using and **maintaining the confidentiality of all information made available by Access**. This includes printouts and transfers of data to any electronic form, storage, or database….

Ex. 1 (emphasis added).

9.    Fite also received and was bound by the Employee Handbook. The Employee Handbook required, among other things, that employees treat the Medical Center's documents and information as confidential:

D. CONFLICTS OF INTEREST

…

The materials, plans, ideas, records, and other business data of this organization are the property of the Medical Center and should never be given to an outside firm or individual except through normal channels and with appropriate authorization. Any improper transfer of material or disclosure of information, even though it is not apparent that an employee has personally gained by such action, constitutes unacceptable conduct. Any employee who participates in such practice will be subject to disciplinary action, up to and including discharge.

…

E. CONFIDENTIALITY

Information regarding patients and Medical Center activities is strictly confidential. Do not discuss such information inside or outside the Medical Center with anyone not directly concerned with the patient's

care and treatment. Violation of this confidence will be grounds for immediate termination.

10. Fite signed a "Receipt of Handbook" in which he agreed to "abide by the policies and procedures of the Medical Center as a condition of [his] employment." *See* Receipt of Handbook attached as Exhibit 2.

11. On February 22, 2006, Fite became a "laboratory assistant per diem." In notifying Sylvia Rasey, the EAMC Laboratory Manager, of this move, Fite noted that his work at EAMC had been "a great learning opportunity and a pleasure." *See* February 8, 2006 Letter attached as Exhibit 3.

## B. __Fite is promoted to management but absconds with the Medical Centers trade secrets, confidential documents, and proprietary information.__

12. In August 2006, Fite was promoted to the position of Medical Technologist II, a full time position. Approximately a year later, Fite was again promoted, this time to Process Management Analyst, a full time, salaried position.

13. In May 2008, Fite was made the Director of Operations for Lab Outreach Services and became a member of the EAMC management team. He was given a great deal of responsibility and autonomy in this role. He assumed a variety of duties to the Medical Center, including fiduciary duties.

14. In November 2008, EAMC formed Aperian. Fite subsequently became the Director of Operations for Aperian and was again given a great deal of freedom, authority, and responsibility. He again assumed a variety of duties to the

Medical Center, including fiduciary duties of loyalty and care, and a duty of reporting.

15.     Unfortunately, during the time Fite worked for the Medical Center, Fite took thousands of documents loaded with the Medical Center's confidential information, proprietary information, and trade secrets, including, but not limited to, by transferring them to his personal email account in direct violation of his contracts with the Medical Center.

16.     Upon information and belief, Fite subsequently transferred those documents to third-parties in violation of his contracts with and duties to the Medical Center.

17.     Fite did not, at any point, express a belief or report to his superiors that the Medical Center's actions or practices violated the Stark Laws, Anti-Kickback Statute, and/or any other laws.[1]

**C.     <u>Fite resigns after being confronted with evidence of an improper relationship with his subordinate.</u>**

18.     During his time working as a manager at the Medical Center, Fite began an inappropriate romantic relationship with a subordinate manager.

19.     When the Medical Center first heard of the relationship, it approached Fite about the relationship but Fite denied that a romantic relationship existed.

---

[1] On the few occasions Fite expressed concerns about compliance issues, the Medical Center was responsive to his concerns and took action promptly.

20.    The Medical Center later came into possession of additional evidence of Fite's inappropriate relationship and offered to transfer Fite or his paramour to a different department. But he and his girlfriend continued to refuse a transfer.

21.    Ultimately, after being confronted, Fite resigned his position. On May 23, 2013, Fite gave notice of his resignation, expressing gratitude for his experience:

> **I am writing to announce my resignation** from the position of Director of Operations of Lab Outreach (or Assistant Director depending on whether that has been processed) effective today (May 23rd, 2013). **I have enjoyed my time working at East Alabama Medical Center, and I wish you the best.**

May 23, 2013 Email attached as Exhibit 4 (emphasis added).

22.    Fite did not return, and on information and belief, did not delete or destroy, the thousands of confidential documents he had taken from the Medical Center.

23.    Notably, in an apparent effort to cover up his activities at EAMC, Fite took steps to eliminate or destroy evidence on his work computer.

## COUNT I – BREACH OF FIDUCIARY DUTIES

24.    As the Director of Operations for Lab Outreach Services at EAMC and Director of Operations at Aperian, Fite owed the Medical Center fiduciary duties, including duties of loyalty, care, and reporting violations of the law.

25.     Through his actions described herein, Fite breached his fiduciary duties to the Medical Center.

26.     The Medical Center has been damaged as the proximate result of the actions of Fite.

WHEREFORE, the Medical Center demands judgment against Fite, including an award for compensatory damages, punitive damages, and all other relief available under Alabama law.

## COUNT II – BREACH OF CONTRACT (EMPLOYEE HANDBOOK)

27.     As a condition of his employment with EAMC, Fite agreed to abide by the terms of the Employee Handbook.

28.     Through his actions described herein, Fite breached his contract with the Medical Center.

29.     The Medical Center has been damaged as the proximate result of the actions of Fite.

WHEREFORE, the Medical demands judgment against Fite, including an award for compensatory damages and all other relief available under Alabama law.

## COUNT III – BREACH OF CONTRACT (EAMC ELECTRONIC SYSTEM(S) ACCESS USER SECURITY CONTRACT)

30.     As a condition of his employment with EAMC, Fite agreed to abide by the terms of the EAMC Electronic System(s) Access User Security Contract.

31.     Through his actions described herein, Fite breached his contract with the Medical Center.

32.     The Medical Center has been damaged as the proximate result of the actions of Fite.

WHEREFORE, the Medical Center demands judgment against Fite, including an award for compensatory damages and all other relief available under Alabama law.

## COUNT IV - ALABAMA TRADE SECRETS ACT

33.     ALA. CODE § 8-27-1, *et seq.* is the Alabama Trade Secrets Act (the "ATSA"). Under the ATSA:

> A person who discloses or uses the trade secret of another, without a privilege to do so, is liable to the other for misappropriation of the trade secret if:
>
>> (1) That person discovered the trade secret by improper means;
>>
>> (2) That person's disclosure or use constitutes a breach of confidence reposed in that person by the other;
>>
>> …

ALA. CODE § 8-27-3.

34.     Through his actions described herein, and upon information and belief, Fite has willfully and maliciously misappropriated the Medical Center's trade secrets in violation of the ATSA.

35.     As a result of Fite's willful and malicious misappropriation of its trade secrets, the Medical Center has suffered damages, plus attorneys' fees and costs.

WHEREFORE, the Medical Center demands judgment against Fite, including an award for compensatory damages, exemplary damages, attorneys' fees, and all other relief available under Alabama law.

## COUNT V – COMPUTER FRAUD AND ABUSE ACT

36.     The Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 (2012) "permits private parties to bring a cause of action to redress a violation of the CFAA." *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 645 (4th Cir. 2009). In the Eleventh Circuit, violations include both "hacking" violations and "use" violations. *See United States v. Rodriguez*, 628 F.3d 1258, 1263 (11th Cir. 2010). That is, the CFAA's prohibition on accessing a computer without authorization or exceeding authorized access includes a prohibition against using information in a way other than that allowed by the authorizing party, e.g., an employer.

37.     18 U.S.C. § 1030(g) provides that a private right of action for a "person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief."

38.     Through his actions described herein, Fite violated the CFAA.

39.    The Medical Center has been damaged as the proximate result of the actions of Fite.

WHEREFORE, the Medical Center demands judgment against Fite, including an award for compensatory damages and all other relief available under law.

## REQUESTED RELIEF

**WHEREFORE,** Aperian Laboratory Solutions, LLC and the East Alabama Heath Care Authority respectfully request that the Court enter judgment against Fite, including an award for compensatory damages, punitive/exemplary damages, attorneys' fees, costs, interest, and all other relief available under law.

Dated: March 29, 2016

*s/ James A. Hoover*
James A. Hoover
S. Greg Burge
Kelli C. Fleming
Benjamin B. Coulter

*Attorneys for Defendants and
Counterclaim Plaintiffs*
APERIAN LABORATORY SOLUTIONS,
LLC AND EAST ALABAMA HEALTH
CARE AUTHORITY D/B/A EAST
ALABAMA MEDICAL CENTER

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jhoover@burr.com
gburge@burr.com
kfleming@burr.com
bcoulter@burr.com

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax, or email on March 29, 2016:

Robert E. Battle
Adam P. Plant
BATTLE & WINN LLP
2901 2nd Avenue South, Ste 220
Birmingham, AL 35233

Scott A. Powell
Donald P. McKenna, Jr.
HARE WYNN NEWELL & NEWTON LLP
2024 Third Avenue North, Suite 800
Birmingham, AL 35203-3331

Daniel J. Martin
JONES WALKER LLP
One Federal Place
1819 5th Avenue North Suite 1100
Birmingham, AL 35283

Timothy Burkhard
Adrienne Dresevic
Carey F. Kalmowitz
THE HEALTH LAW PARTNERS, P.C.
29566 Northwestern Hwy, Suite 200
Southfield, MI  48034

Stephen M. Azia
BAKER DONELSON
901 K Street N.W. Suite 900
Washington, DC 20001

Sara Turner
BAKER DONELSON
1400 Wells Fargo Tower
420 20th Street North
Birmingham, Alabama 35203

Katy C. Laster
EVANS PETREE PC
1000 Ridgeway Loop Road, Suite 200
Memphis, TN 38120

Don B. Long, III
Assistant United States Attorney
1801 4th Avenue North
Birmingham, AL 35203

_s/ James A. Hoover_
OF COUNSEL