FILED
2018 Mar-20 PM 03:15
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT 11
# SEPARATION AGREEMENT

## SEPARATION AGREEMENT

This Agreement is entered into on the 21st day of May, 2013, by and between East Alabama Medical Center, together with any parent, subsidiary or related firm, corporation or other business entity (hereinafter the "Medical Center") and Leamon Trae Fite (hereinafter referred to as "Fite").

WHEREAS, Fite will resign from his employment with the Medical Center effective May 21, 2013.

WHEREAS, the Medical Center desires to compensate Fite for services performed and to protect its legal and proprietary interests; and

WHEREAS, both Fite and the Medical Center are executing this Agreement based on a mutual decision for the purpose of acknowledging that the Medical Center and Fite have no further obligations except as hereinafter set forth and to release each other from any and all actions, claims and demands whatsoever that now exist or may hereafter accrue against the Medical Center arising out of Fite's employment with the Medical Center or the severance of his employment relationship with the Medical Center;

NOW THEREFORE, the parties intending to be legally bound, hereby agree that Fite's employment relationship with the Medical Center will be terminated as set forth below.

1.  In exchange for and in consideration of Fite's release of any and all claims arising out of or related to his employment relationship with the Medical Center and/or his termination thereof, and in exchange for and in consideration of the other

02556722.1

Exhibit 11 to
MSJ on Counter
Claims



PLAINTIFF'S
EXHIBIT
44
Nutter

promises, covenants and agreements set out herein below, Fite and the Medical Center agree as follows:

Fite's last day as an employee of the Medical Center will be May 21, 2013 and his employment will effectively end as of that date. Subject to the provisions set forth below, the Medical Center will pay Fite 3 months' severance through August 16, 2013 (less taxes and withholdings required by law). This amount is in addition to any amount that Fite would otherwise be entitled to as the result of his employment or the termination thereof. The Medical Center will provide Fite a neutral reference of employment if it is contacted by a prospective employer of Fite.

2. In exchange for and in consideration of the promises, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Fite agrees:

A. to release and forever discharge the Medical Center, its parent and affiliated corporations and their respective officers, directors, agents and employees from any and all suits, claims, charges, causes of action, rights, demands, damages, costs, expenses or attorney's fees, which he now has or may hereafter have against any one or more of them on account of, connected with or growing out of any aspect of his employment with the Medical Center or termination thereof, including, but not limited to, any claims, rights or demands arising out of any oral or written contractual relationship; any local, state or federal regulation or law, including but not limited to, (1) the Civil Rights Act of 1991, (2) the Civil Rights Act of 1964, (3) the Civil Rights Act of 1866, (4) the Age Discrimination In Employment Act (ADEA), (5) the Equal Pay Act, (6)

-2-

the National Labor Relations Act, (7) the Fair Labor Standards Act, (8) the Employee Retirement Income Security Act (ERISA), (9) the Americans with Disabilities Act (ADA), (10) the Workers Adjustment and Retraining Notification Act (WARN), (11) the Consolidated Omnibus Budget Reconciliation Act (COBRA), (12) the Veterans' Reemployment Rights Act, (13) the Alabama Age Discrimination Act, (14) any Workers Compensation claims, (15) the Family Medical Leave Act (FMLA), (16) the Medicare and Medicaid Anti-Kickback Statute, 42 U.S.C. §1320a-7b(b), (17) the federal Physician Anti-Self Referral Law, 42 U.S.C. § 1395nn, (18) the Civil False Claims Act, 31 U.S.C. §§ 3729-3733, (19) the Civil Monetary Penalties and Exclusions Acts, 42 U.S.C. §1320a-7a, (20) the Patient Protection Affordable Care Act (Public Law 111-148), including Section 1558, and (21) the Health Insurance Portability and Accountability Act (hereinafter HIPPA) of 1996 and regulations thereto, and (22) any other federal or state statutory, regulation or common law theory of liability or damages.

B. that he will refrain from publicly or privately engaging in any negative, harassing or disparaging remarks or conduct toward the Medical Center, its directors, its officers, its management, or its employees. The Medical Center also agrees that it will not undertake any negative, harassing, or disparaging remarks or conduct toward Fite. In accordance with its normal practice, the Medical Center will provide neutral job references.

C. Fite shall keep confidential forever all nonpublic information relating to Medical Center, any entity affiliated with The Medical Center, and/or any information regarding programs, services, personnel, trade secrets, or other proprietary information

-3-

learned or accessible during the course of Fite's employment with The Medical Center. Fite agrees to return all originals and copies of such materials in his possession, under his control, and/or retained by Fite in any medium. Fite also agreed to return all property of the Medical Center, including all documents, papers, software, hardware, cell phones, computers, vehicles and/or any other such property or written information belonging to or concerning the Medical Center within two (2) days of the signing of this Agreement.

  D. cooperate fully with the Medical Center in any internal investigation or administrative, regulatory or judicial proceeding as requested by the Medical Center, including, without limitation being available to the Medical Center upon reasonable notice for interviews and factual investigations, providing statements or appearing at the Medical Center's request to give sworn testimony without requiring service of a subpoena or other legal process.

  E. Fite agrees to continue to observe the quality assurance privilege, the attorney-client privilege, and all other applicable privileges as to all matters within Fite's knowledge and to work with the Medical Center to preserve the confidentiality of any quality assurance material, attorney-client communications, confidential patient information, or other confidential or privileged information. Fite also agrees to comply with all requirements of HIPPA.

  F. Fite acknowledges and agrees that he has no knowledge of any violation of any law, statute regulation, ordinance, procedure or policy of the Medical

-4-

Center or its officers, agents, employees, directors or any entity affiliated with the Medical Center, including its officers, agents, employees or directors.

    G.   Fite forever covenants to keep all matters concerning this Agreement and the terms of this Agreement confidential and agrees not to discuss this matter with any person with the exception of his attorney, absent compulsion of legal process.

    3.   Upon a violation, breach or failure to comply with the terms of this Agreement the Medical Center shall immediately seek repayment of any compensation or monies paid to Fite set forth in this Agreement. Exercise of this right by the Medical Center shall in no way limit the Medical Center's right to seek all legal and equitable damages and/or remedies arising out of Fite's breach of any provision of this Agreement. More specifically, in the event Fite breaches or threatens to breach any of the provision of this Agreement, the Medical Center shall have the right and remedy to have the provisions of this Agreement specifically enforced by any court having equity jurisdiction, it being acknowledged and agreed that any such breach or threatened breach will cause irreparable harm to the Medical Center and that money damages will not provide the Medical Center with an adequate remedy. Such rights and remedies shall be in addition to, and not in lieu of, any other rights and remedies available to the Medical Center under law or in equity. Fite recognizes and agrees that the Medical Center's remedy at law for breach of this Agreement would be inadequate, and further agrees that, for breach of such provisions, the Medical Center shall be entitled to injunctive relief and to enforce its rights by an action for specific performance, and shall

be entitled to recover its reasonable attorneys' fees incurred in any such action, including enforcing it as a defense.

4. The parties understand and agree that this Agreement shall in no way affect Fite's entitlement to benefits that he may be eligible to receive in accordance with the terms of the Medical Center's pension or retirement plan.

5. It is understood that this Agreement does not constitute an admission by the Medical Center or Fite of any violation of any federal, state or local law, ordinance, administrative regulation or case law or common law theory of liability or damage.

6. The parties agree that the terms of this Agreement will be construed in accordance with the laws of Alabama.

7. This Agreement constitutes the entire agreement between the parties and supersedes all prior agreements and understandings in connection with Fite's employment.

8. This Agreement may be used as evidence in subsequent proceedings in which either party alleges a breach of the Agreement.

9. The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other paragraphs shall remain fully valid and enforceable.

10. By his signature below, Fite acknowledges that he has carefully read and understands this Agreement and has entered into it knowingly and voluntarily.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the _____ day of _____, 2013.

EAST ALABAMA MEDICAL CENTER

By:_____        _____
    Susan Johnston, AVP Human Resources        Date

_____        _____
LEAMON TRAE FITE                                            Date