FILED
2018 Apr-27  AM 08:21
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel. | ) ) ) |
| LEAMON M. FITE, III, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) CASE NO. 5:13-cv-1626-LSC |
| APERIAN LABORATORY SOLUTIONS, LLC; EAST ALABAMA HEALTH CARE AUTHORITY d/b/a EAST ALABAMA MEDICAL CENTER; et al., | ) ) ) ) ) ) ) |
| Defendants. | ) |

## DEFENDANTS' REPLY IN SUPPORT OF MOTION TO STRIKE

ARGUMENT

I. Michele Hunter is not "identified with an adverse party" under FED. R. EVID. 611(c).

Fite maintains that he was entitled to ask Michele Hunter leading questions during her deposition because she "was Aperian's own employee," Doc. 177 at 2, and thus was "identified with an adverse party" under FED. R. EVID. 611(c). *Id.* at 3. To be clear, Hunter is a *former* Aperian employee who now works for a competing laboratory. Whether a former employee can be identified with an adverse party under Rule 611(c) is "an unsettled inquiry whose resolution is often fact-dependent." *Fehr v. SUS-Q Cyber Charter School*, 2015 WL 6166627, *3 (M.D. Penn. Oct. 20, 2015), *id.* at *4 (holding, in part, that plaintiff could call in her case-in-chief a *current* employee of defendant as a witness "associated with an adverse party" but could not do so as to three *former* employees). And under the facts of this case, Hunter is "identified with" Fite – not Aperian.

Hunter began working for Aperian in 2007, and left the laboratory nearly six years ago – in 2012 – to work for a different department of EAMC. Hunter Dep., Ex. N to Doc. 146, at 23-24, 300. Hunter left Aperian because she was upset that management was marginalizing her role with the laboratory. *Id.* at 120-21, 139 (claiming that she "stopped getting invited" to business meetings and she was "feeling so left out of things"), *id.* at 311-12 (confirming that she left Aperian because she was unhappy she was being excluded from management decisions). Hunter quit her job with the hospital

1

in 2014 and began working with a competing national laboratory, "U.S. Medical Scientific" ("USMS"). *Id.* at 21-22, 52.

In her new role with USMS, Hunter is now critical of various Aperian business practices. For example, she alleged during her deposition that a backlog of urine specimens was kept in a closet near her office which were tested and supposedly billed to insurers. *Id.* at 127-28. Allen Valaer, however, has denied that claim. Valaer Dep., Ex. A to Doc. 146, at 177-79. And Hunter's deposition is replete with instances in which Fite's counsel asked leading, conclusory, and argumentative questions to which Hunter simply acquiesced, as demonstrated by the following exchange regarding Aperian's collector practice:

> Q. Okay. And haven't we sort of seen throughout the documents we've gone through today that it's volume that is used to justify the need for the collector, that we've got to have twelve samples a day to justify this collector?
>
> MR. MARTIN: Object to the form.
> MR. COULTER: Object to the form.
>
> A. Yes.
>
> Q. Okay. So that the fact that . . . time is being leased and not volume, seems to be at odds with what we've seen throughout the day; is that a fair statement?
>
> MR. MARTIN: Object to the form.
> MR. COULTER: Same objection.
>
> A. Yes.

>Q. And if . . . the lab is just leasing time, that doesn't prevent the employee from doing other jobs . . . that do not relate to collecting for the doctor, correct?
>
>MR. COULTER: Object to the form.
>
>A. Correct.

*Id.* at 292-93; *see also id.* at 64, 72, 177-78, 206, 235.

Granted, Hunter's acquiescence alone does not establish that she is "identified with" Aperian, but the sum total of her deposition does. Hunter is a former, disgruntled employee who works for a competing laboratory, is now critical of Aperian business practices, and is being used as Fite's mouthpiece in this case. If anything, Hunter is adverse to *Aperian*. Thus, Fite was not permitted to ask her leading questions, and her testimony should be stricken on that ground.

>II. Hunter does not have sufficient personal knowledge of the *particular matters* about which she was questioned.

Fite quotes the following case law in arguing that Hunter had the requisite personal knowledge under FED. R. EVID. 602:

>The Eleventh Circuit has determined a matter is "within a witness's personal knowledge" if it is "'derived from the exercise of his own senses, *not from the reports of others* – in other words, [it] must be founded on *personal observation*." *Riley*, 990 F. Supp. 2d at 1187 (quoting *United States v. Evans*, 484 F.2d 1178, 1181 (2d Cir. 1973)).

Doc. 177 at 4 (emphasis added). This law, however, strongly cuts against Fite's arguments.

3

For example, Fite maintains that Hunter had sufficient knowledge to testify regarding the purpose of Aperian's contracts with Compass and TDS and why Aperian allegedly "paid more commissions on [pain clinic] samples" based simply on her "role at Aperian . . . and her involvement with the Aperian Board." *Id.* at 7-8; *see also* Doc. 158 at 4-6 (objections 2. and 3.). Despite what her role may have generally been with Aperian, she had insufficient knowledge about these *particular matters*. *See* FED. R. EVID. 602 ("A witness may testify *to a matter* only if evidence is introduced sufficient to support a finding that the witness has personal knowledge *of the matter*.") (emphasis added).

Hunter testified that as Aperian's "manager of client services," she had no responsibilities regarding third party contracting, *id.* at 35, she was not involved in the negotiation of the Summit contract, *id.* at 60, and she was not involved in contract negotiations with Chapman. *Id.* at 120-21. In fact, she was excluded from Aperian's "closed-door" meetings with Chapman regarding the Compass / TDS contracts – the very reason she ultimately left Aperian. *Id.* at 120 ("[O]nce Jannie came on board, I stopped getting invited."). In light of that, Hunter testified as follows:

> Q. Okay. Do you have an understanding that Jannie and her companies were compensated based on a percentage commission.
>
> MR. COULTER: Object to the form.
>
> A. That was my understanding.
>
> ***
>
> Q. Better question: What's your basis for that understanding?

4

> A. I guess I *assumed* that it would be [a] similar process from what we had done with Summit is what we were . . . working out with Jannie.
>
> \*\*\*
>
> Q. Okay. Were the commissions that were sent to Jannie's companies by Aperian, were those commissions for specimens that were referred by Jannie's companies to Aperian, that Aperian billed insurance and other payors?
>
> A. I would *assume* so.
>
> MR. COULTER: Object to the form.

*Id.* at 121-22 (emphasis added). As this exchange demonstrates, Hunter's testimony about Aperian's contractual relationships was based merely on various assumptions – not her personal knowledge. This testimony is therefore due to be stricken.

Fite similarly argues that Hunter had sufficient knowledge to testify regarding how doctors were actually using Noble cups in their offices based on her "roles and responsibilities at Aperian." Doc. 177 at 2; *see also* Doc. 158 at 6-7 (objection 4.). Fite maintains that Hunter had personal knowledge of this issue based on an e-mail she received discussing the cup supply for Nashville Pain Clinic ("NPC"). Doc. 177 at 9. However, this e-mail does nothing to support Fite's factual allegation that doctors at that clinic were "using the cups to get rapid . . . point of care results." Doc. 149 at 16, ¶ 102. In fact, during her deposition, Hunter said she did not know what the NPC doctors were doing with the cups. Hunter Dep. at 217-18. Further, there is no evidence

5

that Hunter "personally observed" how the cups were being used, which Fite agrees is required to establish sufficient knowledge. Doc. 177 at 4. Accordingly, Hunter's testimony regarding this topic should be stricken.

Lastly, Fite maintains that Hunter had sufficient knowledge to testify that doctors were billing for the use of Noble cups. According to Fite, Hunter knew this based on an e-mail "she received notifying her that an Aperian account was using the rapid screen cup and billing for the screening." Doc. 177 at 10; *see also* Doc. 158 at 9-10 (objection 6.). Fite neglects to mention that Summit took action to ensure the clinic at issue did not continue that practice. *See* Ex. 25 to Hunter's Dep. Nonetheless, any purported knowledge Hunter had about this issue was not based on her own personal observations, but – at most – "the reports of others." *See* Doc. 177 at 4. Thus, this solitary e-mail regarding a single instance of billing by a pain clinic that was quickly stamped out does not, as Fite claims, conflict with Hunter's unequivocal testimony that she did not know whether doctors were billing for Noble cups. Hunter Dep. at 349.[1] Accordingly, she had insufficient knowledge to testify on this topic, and the Court should strike any testimony allegedly supporting that doctors were billing for Noble cups.

---

[1] For argument purposes only, if this e-mail was sufficient to provide Hunter with knowledge, it was as to *this* clinic alone, not – as Fite broadly suggests – *all* clinics.

                                                              */s/ Adam W. Overstreet*
                                                              James A. Hoover
                                                              S. Greg Burge
                                                              Benjamin B. Coulter
                                                              Adam W. Overstreet

                                                              *Attorneys for Defendants*
                                                              APERIAN LABORATORY SOLUTIONS, LLC AND EAST ALABAMA HEALTH CARE AUTHORITY D/B/A EAST ALABAMA MEDICAL CENTER

**OF COUNSEL:**
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone: (205) 251-3000
Facsimile: (205) 458-5100
jhoover@burr.com
gburge@burr.com
bcoulter@burr.com
aoverstreet@burr.com

### CERTIFICATE OF SERVICE

      I hereby certify that I have served a copy of the foregoing document by Notice of Electronic Filing, or, if the party served does not participate in Notice of Electronic Filing, by U.S. First Class Mail, hand delivery, fax, or email on April 27, 2018:

Adam P. Plant
Robert E. Battle
BATTLE & WINN LLP
2901 2nd Avenue South, Ste. 220
Birmingham, AL 35233

Scott A. Powell
Donald P. McKenna, Jr.
Randi Leigh McCoy
HARE WYNN NEWELL & NEWTON LLP
2025 Third Avenue North, Ste. 800
Birmingham, AL 35203-3331

Daniel J Martin
JONES WALKER LLP
One Federal Place
1819 5th Avenue North Ste. 1100
Birmingham, AL 35283

Timothy Burkhard
Adrienne Dresevic
Carey F. Kalmowitz
THE HEALTH LAW PARTNERS, P.C.
1983 Marcus Avenue, Ste. 106
Lake Success, NY 11042

Don B. Long, III
Assistant United States Attorney
1801 4th Avenue North
Birmingham, AL 35203

                                                  */s/ Adam W. Overstreet*
                                                  OF COUNSEL